UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEONOR LARA BORROTO,

    Plaintiff,

v.                                                      CASE NO.:  2:19-cv-356-38NPM

WAL-MART STORES EAST, LP,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW[1]

Defendant, WAL-MART STORES EAST, LP ("Walmart"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files its Motion for Summary Judgment and Memorandum of Law, and states:

1. Plaintiff's Amended Complaint alleges a single count of negligence against Walmart based on an incident that occurred on October 25, 2016 wherein Plaintiff alleges she slipped and fell at a Walmart store located at 505 S.W. Pine Island Road in Cape Coral, Florida.

---

[1] On August 4, 2020, Defendant filed an unopposed Motion to Extend the Deadline for Dispositive Motions and *Daubert* Motions [DE 47] seeking an extension of time to file dispositive motions until after the completion of specific discovery: the deposition of Walmart's former associates, Defendant's expert witness, and Plaintiff's non-retained expert, Dr. Roush. To the extent the Court grants Defendant's Motion *nunc pro tunc* Defendant herein requests leave to amend this Motion for Summary Judgment to the extent the additional discovery bears on the dispositive issues raised in this motion.

2. Plaintiff claims she slipped in a puddle of water or liquid located on the floor of the store and fell.

3. Plaintiff alleges the Defendant was negligent in:

   a. Failing to use reasonable care to maintain the store premises in a reasonably safe condition;

   b. Failing to warn the Plaintiff of an inherently dangerous condition and/or concealed peril of which the Defendant either knew or should have known, and which was unknown to the Plaintiff and could not be discovered or anticipated by her through the exercise of reasonable care;

   c. Failed to take proper and timely action to reduce, minimize or eliminate foreseeable risks before they manifested themselves as particularly dangerous conditions on the premises, and thus, selected, employed and utilized a negligent mode of operation for the inspection and maintenance of the floors of the Store in the aisle that resulted in the creation of a dangerous or unsafe condition;

   d. Failed to make timely and periodic inspections of the floor of the store and failed to have reasonable policies and procedures in effect for conducting such inspections; and

   e. Created or allowed a dangerous condition to exist in its store, to wit, a puddle of water or liquid on the floor of the store where customers were allowed to walk in and through while shopping, which liquid was on the floor due. [sic]

[DE 34].

4. Walmart is entitled to Summary Judgment because there is no evidence that the water constituted a dangerous condition. Furthermore, there is no evidence that Walmart had notice of the alleged dangerous condition, a requisite element in order to establish negligence on the part of the Defendant. F.S. 768.0755.

5. Based on the pleadings, exhibits, and depositions of record in this lawsuit, there is no genuine issue of material fact and Walmart is entitled to summary judgment as to all claims against it.

WHEREFORE, Defendant, WAL-MART STORES EAST, LP, respectfully requests that this Court enter an order granting Summary Judgment and such additional relief as is deemed appropriate.

## MEMORANDUM OF LAW

### I. UNDISPUTED FACTS

1. On October 25, 2016, Plaintiff visited the Walmart store located at 505 S.W. Pine Island Road in Cape Coral, Florida. [DE 34]. Plaintiff's husband drove them to Walmart. (Depo Jorge Borroto p. 24:13-24:18, Ex. 1); (Depo Leonor Borroto p. 46:13-46:17, Ex. 2). On the date of the alleged incident, Plaintiff went to Walmart at approximately ten o'clock in the morning. (Ex. 2: 46:9-46:12).

2. Plaintiff had shopped at this particular Walmart at least once before the date of the alleged incident. (Ex. 2: 49:14-50:10).

3. Upon arrival to the store, Plaintiff entered the main entrance that leads into the bakery and deli. (Ex. 2: 47:4-47:9).

4. Plaintiff entered the store quickly, went to the bakery, asked an Associate where the Cuban bread was located, and then picked up a loaf of Cuban bread. (Ex. 2: 47:12-47:13).

5. After getting the bread, Plaintiff began to walk towards the front of the store to make her purchase. (Ex. 2: 52:23-53:2).

6. As Plaintiff was looking up, she fell forward onto the floor. (Ex. 2: 53:8-53:9; 54:11-54:12).

7. Plaintiff did not see anything on the floor and does not know what caused her to fall.

> **Q:** **Did you see anything on the ground before you fell?**
>
> **A:** **No.**
>
> **Q:** **Were you looking at the ground?**
>
> **A:** **I was looking forward going to pay the bread.**
>
> ***
>
> **Q:** **After the fall when you were on the floor, did you look around to see why you fell?**
>
> **A:** **No, I didn't look. I just went to take the bread and go to pay.**
>
> **Q:** **After the fall?**
>
> **A:** **No.**
>
> **Q:** **So after the fall you didn't see anything on the ground?**
>
> **A:** **I didn't have a chance to see anything. Tell her that the manager came right away, did not allow me to pay, and did not allow me to move. He call the rescue and he said no, no, no. And the rescue came.**
>
> ***
>
> **Q:** **Why did you fall?**
>
> **A:** **I don't know. I don't know.**

(Ex. 2: 53:5-53:9; 56:9-56:20; 56:24-56:25).

8. Plaintiff never saw water on the floor and relies solely on photographs purportedly taken by her husband after the incident to establish the condition which she speculates caused her fall.

> **Q: Earlier you told me that you didn't know why you fell. You told me that – wait, one at a time. You told me that you didn't look around, you didn't see anything on the floor. Wait, wait, wait. So why would you tell the doctor that you fell on water, if you didn't see anything on the floor?**
>
> **A: At that moment is when I reacted, and I explained to the doctor because he wanted to know how the fall happened, and I had to tell him how it happened.**
>
> **Q: So were you just assuming that there was water on the floor?**
>
> **A: There was water on the floor when I slide and fall – or slipped and fall. But at that moment I was not myself, so I just fell and that was it.**
>
> ***
>
> **Q: Again I'll ask because you have to talk one at a time. Did you see water on the floor after you fell?**
>
> **A: After I fell I didn't see the water because they did not allow me to stand up. The manager did not allow me to stand up. They called the rescue. The rescue came and they took me right away with the rescue.**
>
> **Q: So you did not see water on the floor; correct?**
>
> **A: Because at that moment I fell. But the water is in the picture. Tell her to see the picture because you can see the water there.**

> **Q:** I am not concerned about the picture. I am asking what you saw and what you remember.
>
> **A:** No, I didn't see it. But you're not supposed to have water on the floor or things like that on the floor, because the same way this happened to me it can happen to another customer who goes there, so you are not supposed to have it.
>
> **Q:** But you didn't see it on the floor?
>
> **A:** But I walk in the area where it was and I fell.
>
> **Q:** Who took these pictures?
>
> **A:** Well, whoever – the person who took the picture was my husband, because when they call him, the manager would not allow him to get close to me, so he says well, then let me take pictures for any reason since I can't go.
>
> ***
>
> **Q:** Tell me if I'm understanding this correctly. And let me say the whole thing before you start answering. You didn't see water on the floor either before or after the accident. You saw water from a picture; yes or no?
>
> **A:** Yes.

(Ex. 2: 65:2-65:16; 65:23-66:22; 67:14-67:19).

9. Plaintiff's photographs taken by her husband are attached as Exhibit 5, 6, 7, 8.

10. After her fall, Plaintiff did not feel any water nor were her clothes wet. Plaintiff merely assumes that she fell due to a puddle of water on the floor.

> **Q:** You mentioned that whenever you were on the floor it was cold; correct?

    **A:**    Yes.

    **Q:**    But were any of your clothes wet?

    **A:**    No. I felt the coolness, the cold from the floor, because I stayed there for a long time.

***

    **Q:**    When is the first time that you heard there was water on the floor? Was it after you left the store?

    **A:**    I left the store and I saw the sandals, the pictures.

    **Q:**    So you didn't feel water on your feet, you just saw pictures of your sandals with some kind of liquid on it; correct?

    **A:**    I didn't feel it, but it's probably like a little puddle of water that was there coming from the produce. I mean, I am not paying attention to that. I am going there to buy the bread.

(Ex. 2: 87:6-87:11; 88:17-89:3).

11. Plaintiff's husband was not in the store when the alleged incident occurred.

    (Ex. 1: 25:17-25:19).

12. After arriving to the scene, Plaintiff's husband was unable to determine the source of the liquid or length of time that the alleged water was present on the floor prior to Plaintiff's fall.

        **Q:**    Do you have any idea how long that water had been on the floor prior to your wife's incident?

        **A:**    No, because I went in when I was notified to look for her. I cannot give you false testimony because I don't know if that had been there for days or –

        **Q:**    Or minutes; correct?

> A: Yeah.
>
> Q: Or seconds?
>
> A: **It is unknown. Tell her I don't know. That's what I could notice, what my eyes saw.**

(Ex. 1: 35:14-35:23).

13. Bakery Associate Mary Proffer was working on the date of the incident, and testified during the course of her shift she would have had occasion to come out "in front of the bakery or deli displays for purposes of checking, or stocking." See Deposition of Mary Proffer, Ex. 3: 39:13-20.

14. Ms. Proffer had been trained that while on the floor, if she saw any debris or liquid to clean it up, or call for assistance to clean it up. Ex. 3: 39:21-25.

15. Walmart's store manager testified that all Walmart associates are trained to pick up any debris or clean up any spills they observe while walking through the store. See deposition of Adrianne Pope, Ex. 4: 23:18-24:6; 24:13-25:1. And that the associates are required to keep a look out for any potentially unsafe conditions that might be on the floor while they are working. Id.: 25:5-10

## II. ARGUMENT

### A. Standard of Review

In diversity actions, federal courts must apply state substantive rules of law and federal procedural law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817

(1938). A motion for summary judgment is a procedural matter and is governed by Federal Rule of Civil Procedure 56; see Hammer v. Slater, 20 F. 3d 1137, 1140 (11th Cir. 1994). Plaintiff's negligence claim against Walmart is a substantive issue, and thus governed by Florida law. Cover v. Wal-Mart Stores, Inc., 812 F. Supp. 1215 (M.D. Fla. 1993).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Imaging Bus. Mach., LLC. V. BancTec, Inc., 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). In ruling on a Motion for Summary Judgment, the court must view all of the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. Id. (citing Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382 (11th Cir. 2005)). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, Rule 56(c) mandates the entry of summary judgment. See Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); Hilburn v. Murata Elecs. North Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). While courts must view evidence in the light most favorable to the non-movant, they need not allow a case to proceed to a jury based upon implausible inferences. Cuesta v. School Board of Miami Dade County, 285 F.3d 962, 970 (11th Cir. 2002). "The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment."

Rectory Park, L.C. v. City of Delray Beach, 208 F. Supp. 2d 1320, 1325 (S.D. Fla. 2002) aff'd sub nom. Rectory Park v. City of Delray Beach, FL., 82 F. App'x 221 (11th Cir. 2003).

### B. Plaintiff's Claim for Negligent Mode of Operation Fails as a Matter of Law

Plaintiff's Amended Complaint contains a single count of negligence, which incorporates reference to Defendant's alleged negligent mode of operation. [DE 34 ¶4(c)]. To the extent Plaintiff is proceeding on such a claim, it must fail as a matter of law. The plain language of Florida Statute 768.0755 eliminates the negligent mode of operation theory in a slip and fall type premises liability action. LaPosa v. Wal-Mart Stores E., L.P., 2019 WL 2537790 (M.D. Fla. June 20, 2019). The current version of the statute requires proof of actual or constructive knowledge of the transitory foreign substance. In enacting Fla. Stat. § 768.0755, the Florida legislature specifically repealed the language of Fla. Stat. § 768.0710, which had allowed a plaintiff to establish a claim for relief by showing a negligent mode of operation without the showing of actual or constructive knowledge. In interpreting § 768.0755, this Court must "strive to effectuate the legislature's intent" beginning with the plain language of the statute. Id.

### C. There is No Evidence that Walmart Had Actual or Constructive Knowledge of the Alleged Dangerous Condition

Plaintiff alleges Defendant was negligent in in maintain the premises. To be successful on a single claim of negligence Plaintiff must prove all four elements of negligence: (1) a duty to the Plaintiff; (2) the Defendant's breach of that duty; (3)

injury to the Plaintiff arising from the Defendant's breach; and (4) damage caused by the injury to the Plaintiff as a result of the Defendant's breach of duty." Delgado v. Landromax, Inc., 65 So. 3d 1087, 1089 (Fla. 3rd DCA 2011).

With regard to the duty element, a business owner owes only two duties to an invitee such as the Plaintiff under Florida law:

(1) to take ordinary and reasonable care to keep its premises reasonably safe for invitees and

(2) to warn of perils that were known or should have been known to the owner and of which the invitee could not discover.

Delgado at 1087-90, (citing Westchester Exxon v. Valdes, 524 So. 2d 452, 454 (Fla. 3d DCA 1988)).

Section 768.0755, Florida Statutes, governs premises liability for transitory foreign substances in a business establishment and provides in pertinent part as follows:

(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

(b) The condition occurred with regularity and was therefore foreseeable.

Section 768.0755 places the burden of proof on the Plaintiff to establish the Defendant business owner had actual or constructive notice of the foreign substance. See Walker v. Winn–Dixie Stores, Inc., 160 So.3d 909, 911 (Fla. 1st DCA 2014) ("In 2010 the Florida legislature enacted Section 768.0755, Florida Statutes, the clear intent of

which is to re-position the burden of proof in constructive knowledge negligence actions fully onto a plaintiff."); Encarnacion v. Lifemark Hosp. of Fla., 211 So. 3d 275, 278 (Fla. 3d DCA 2017) ("[W]here a business invitee slips and falls on a 'transitory substance' in a business establishment ... proof of the breach element of the claim against an owner of the establishment is statutorily constrained ...."). Thus, in moving for summary judgment, Walmart has to show there is no genuine dispute about its actual or constructive knowledge of the liquid substance on the floor.

Here, there is a complete absence of any evidence that Walmart had actual or constructive knowledge of the existence of a liquid on the floor. With respect to actual notice, there is no question that Walmart did not have actual notice of the alleged hazard. There has been no testimony or evidence that any Walmart employee was aware that water or liquid was present on the floor prior to Plaintiff's alleged fall.

The question then becomes whether Walmart was constructively on notice of the alleged liquid. Constructive notice may be inferred from either:

> (1) the amount of time a substance has been on the floor; or
>
> (2) the fact that the condition occurred with such frequency that the owner should have known of its existence.

Delgado, 65 So. 3d at 1087-90 (citing Schaap v. Publix Supermarkets, Inc., 579 So. 2d 831, 834 (Fla. 1st DCA 1991)). Stated differently, the question is whether there is any proof, circumstantial or otherwise, sufficient to create a material issue of fact to show that the substance had been overlooked and left on the floor for such a time that the store should be charged with negligence because it did not discover and clean it up earlier. *See* Hussain v. Winn Dixie Stores, Inc., 765 So. 2d 141 (Fla. 5th DCA 2000).

Here, the answer is a resounding no. Under similar facts as the instant case, Florida appellate courts have affirmed summary judgments in favor of business owners in slip-and-fall cases. Summary Judgment should be entered when Plaintiff cannot satisfy their statutory burden of establishing notice of the transitory foreign substance by the defendant in a slip and fall case. See Walker v. Winn-Dixie Stores, Inc., 160 So. 3d 909, 912 (1st DCA 2014) (affirming summary judgment where four minutes was not sufficient to establish constructive knowledge).

Here, Plaintiff's assumption that there was water or liquid on the floor is nothing more than mere speculation and conjecture. She does not have any independent knowledge of what caused her to fall. Her **assumption** that her fall was caused by liquid on the floor is based solely on photographs taken by her husband *after* he was notified of the Plaintiff's fall, entered the store and then took photographs. Plaintiff did not see the photographs until sometime after she left the store. More importantly, the photographs Plaintiff relies on do not depict **any** water or liquid on the floor. Plaintiff herself did not observe any liquid on the floor before or after her fall, and did not observe any moisture on her clothes. Moreover, assuming arguendo there was a liquid on the floor, there is not a scintilla of evidence to establish the length of time the water was on the floor. The Plaintiff simply does not know if there was liquid on the floor, and if so, how long it had been there. Additionally, there is no evidence from which a jury could adduce that the liquid had been present for a sufficient time to invite corrective measures (since Plaintiff did not see the liquid she could not testify as to the condition of the alleged liquid at the time

of her incident)  There is simply insufficient evidence for a jury to determine how long the liquid had been present on the floor, thus there is no evidence to suggest the allegedly dangerous condition was (constructively) known to Walmart. What the evidence does establish is that Walmart had in place policies and procedures for all of its associates to continuously keep a look out for any potentially unsafe conditions that might be on the floor, such as liquid or debris, and if encountered to ensure the condition is cleaned up.

Courts routinely grant summary judgment in a Defendant's favor when a Plaintiff fails to adduce evidence on the issue of notice. See Encarnacion v. Lifemark Hospitals of Florida, 211 So. 3d 275 (Fla. 3d DCA 2017)(affirming summary judgment in defendant's favor where plaintiff slipped and fell but failed to present any evidence establishing how long the substance was on the floor.); Wilson-Greene v. City of Miami, 208 So. 3d 1271 (Fla. 3d DCA 2017) (same).  See also Berbridge v. Sam's East, Inc., No. 17-14234, 2018 WL 1357372, at *2 (11th Cir. Mar. 16, 2018) (affirming summary judgment in defendant's favor where plaintiff slipped and fell on "dark" and "dirty" liquid substance because there was no triable issue as to whether substance was on the floor a sufficient amount of time to create constructive notice, relying on Encarnacion and Wilson-Greene). "The mere presence of water on the floor is not enough to establish constructive notice." Delgado, 65 So. 3d at 1090.  Rather, the record must contain additional facts in support of liability, to create a permissible inference upon which plaintiff could rely in defense against a defendant's motion for summary judgment.  Id.

The case of Encarnacion v. Lifemark Hospitals of Florida, is on point. 11 So. 3d 211 So. 3d 275, 278 (Fla. 3d DCA 2017).  In Encarnacion, a woman slipped on a liquid in a hospital which she described as "oily," "dirty" and "dark." Id. The appellate court upheld summary judgment in favor of the business owner, stating that such testimony was insufficient to establish the notice requirements of Section 768.0755. The court explained,

> For such testimony to create a jury issue, the testimony must be accompanied by a "plus," namely some additional fact or facts from which a jury can reasonably conclude that the substance was on the floor long enough to have become discolored without assuming other facts, such as the substance, in its original condition, was not "oily," "dirty" and "dark."

Id. (citing Wilson-Greene, 208 So. 3d at 1275).

In Delgado v. Landromax, Inc., the appellate court upheld final summary judgment in favor of a laundromat where there was insufficient evidence to establish notice of the liquid on the floor.  In Delgado, the Plaintiff slipped and fell on a puddle of water just inside of the Defendant Laundromat's entryway.  The trial court entered final summary judgment in favor of the Defendant Laundromat.  The Third District Court of Appeal affirmed, finding that the Plaintiff failed to produce any evidence the Defendant had actual or constructive notice of the water on the floor.  The Plaintiff in Delgado testified that

- she did not know where the water came from;
- she did not see water anywhere else other than where she slipped;
- she did not know how long the water was on the floor before she slipped; and
- she did not know of anyone at the laundromat who knew the water was on the floor before she walked in.

Thus, the only evidence plaintiff offered was that: (1) the floor was wet, and (2) she slipped and fell. Id. The appellate court ruled that final summary judgment was proper because the Plaintiff failed to prove the Defendant had actual or constructive notice of the water on the floor.

Finally, in Lago v. Costco Wholesale Corporation, the Plaintiff sued Costco after she slipped on a liquid substance and fell and broke her knee while walking into the entrance of the store. 233 So. 3d. 1248 (Fla. 3d DCA Dec. 13, 2017). The Plaintiff in Lago testified that there were no employees near the liquid, it was not raining, she did not see the liquid on the floor before she fell, she didn't know what the liquid was, she didn't know how long it had been there, and she did not see anyone else slip in the same busy entranceway before or after her fall. Id. The Third District Court of Appeal affirmed final summary judgment in favor of Costco because there was no dispute about Costco's actual or constructive notice of the liquid. Id. at *3. "Without additional facts suggesting the liquid had been there for a long period of time or this happened regularly, the trial court properly granted summary judgment in favor of Costco." Id.

Just as in the cases discussed above, Plaintiff cannot meet her burden of establishing that Walmart had constructive notice of the water on the floor. There is no record evidence to suggest the water had been there for a long enough period of time to invite corrective measures or that this type of incident happened with any regularity. This is the exact evidence the courts in Encarnacion, Delgado and Lago determined was insufficient as a matter of law to establish notice to the business

owner. Thus, in accordance with the above authorities, this Court should find there is no evidence of Walmart's actual or constructive notice of the substance and therefore summary judgment should be entered in favor of Walmart.

It is abundantly clear from the evidence, or the lack thereof, that the Plaintiff cannot create an issue of fact as to whether Walmart had constructive notice of the alleged water.

### III.   CONCLUSION

Pursuant to Florida Statute §768.0755, the burden is on Plaintiff to show that Walmart had actual or constructive knowledge of the water on the floor. Plaintiff, however, has failed to offer any evidence that Walmart knew of the water, that the water existed for any length of time such that Walmart should have known of it, or that the water occurred with any regularity. The evidence that Plaintiff has provided, that she potentially slipped and fell on water, is not sufficient to find Walmart negligent as a matter of law. Accordingly, this Court should enter summary judgment in favor of Walmart.

    Respectfully submitted,

    /s/ Amanda J. Sharkey Ross
    Amanda J. Sharkey Ross

I HEREBY CERTIFY that on August 4, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Stephen H. Haskins, Esq.  
The Law Office of Lucas/Magazine  
8606 Government Drive  
New Port Richey, FL  34654  
Tel:  727-849-5353  
lucasmagazine@lucasmagazine.com  
Attorneys for Plaintiff

                                    **/s/ Amanda J. Sharkey Ross**  
AMANDA J. SHARKEY ROSS  
Florida Bar No. 0598666  
Attorneys for Defendant, Wal-Mart Stores East, LP  
HENDERSON, FRANKLIN, STARNES & HOLT  
Post Office Box 280  
Fort Myers, Florida 33902-0280  
Telephone:  239.344.1249  
Fax:  239.344.1542  
amanda.ross@henlaw.com  
tracey.salerno@henlaw.com  
MADISON P. ALLEN  
madison.allen@henlaw.com  
susan.peters@henlaw.com