UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEONOR LARA BORROTO,

    Plaintiff,

v.                                     Case No.: 2:19-cv-356-FtM-38NPM

WAL-MART STORES EAST,
LP,

    Defendant.
_____/

**OPINION AND ORDER**[1]

Before the Court is Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment (Doc. 57), Plaintiff Leonor Borroto's response in opposition (Doc. 59), and Walmart's reply (Doc. 61). Also here is Walmart's *Daubert* Motion (Doc. 56), Borroto's response (Doc. 60) and Walmart's reply (Doc. 64). The Court grants summary judgment and moots the other motion.

## BACKGROUND

This case is about a slip-and-fall at Walmart. As the meme goes, Borroto woke up one morning and went to get some bread.[2] Near the deli, a bakery

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Judge Conway recently defined memes for those unfamiliar with the medium. *Cerny v. Boulevard Del, Inc.*, No. 6:18-cv-1808-Orl-22TBS, 2019 WL 5291208, at *5 n.6 (M.D. Fla. July 11, 2019).

employee handed Borroto a loaf of Cuban bread. Borroto walked a few steps away before slipping and falling.

This is where a picture will help:



(Doc. 59-6 at 100). The deli counter is straight ahead. And Borroto got the bread at the counter opening in the top right. An employee, Richard Scranton, was stocking frozen pizzas by where whoever took this photo stood. At least an hour before Borroto's fall, Scranton went to the deli to slice cold cuts. Before doing so, Scranton wheeled the rack of pizza boxes across the aisle to its place on the left. Borroto fell between the rack and the circular electrical conduit near the bottom center. And the puddle was somewhere in the middle of those landmarks, but closer to the conduit.

In the immediate aftermath, two Walmart employees checked on Borroto. Each saw a puddle of water on the ground. But neither noticed anything distinctive about it. None of the employees could say where the water came from. Nor could Borroto. And nobody knew how long it was there.

Borroto sued for negligence. Now, Walmart moves for summary judgment, arguing it did not have notice of the water.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION[3]

To start, the parties agree Borroto cannot recover on a negligent mode of operation theory. So Walmart is entitled to summary judgment on that theory of liability. *See Maltese v. Burlington Coat Factory Direct Corp.*, No. 2:19-cv-616-FtM-38MRM, 2019 WL 5391392, at *2 (M.D. Fla. Oct. 22, 2019).

Next, the parties dispute whether there was water on the ground near Borroto. That dispute is genuine. Walmart makes much ado about Borroto's testimony of not seeing what she slipped on. Yet Walmart ignores its own employees' testimony. Within seconds of the fall, Scranton saw a puddle of water beside Borroto. (Doc. 59-6 at 13). And the bakery employee noticed a puddle too. (Doc. 57-4 at 18). Taking the facts in the light most favorable to Borroto, the Court finds a genuine dispute on whether water was on the ground. But assuming there was a puddle does not end the analysis.

Slip and falls are a form of negligence. So plaintiffs must show duty, breach, causation, and damages. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. Dist. Ct. App. 2020). In these premises liability cases, a business must have "actual or constructive knowledge of the dangerous condition." Fla. Stat. § 768.0755(1). The burden is on plaintiff to make that notice showing.

---

[3] Sitting in diversity over this negligence claim, the Court applies Florida substantive and federal procedural law. *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017).

4

Fla. Stat. § 768.0755(1); *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. Dist. Ct. App. 2017). The Court tackles each type of notice.

**A. Actual Notice**

Borroto does not necessarily argue for actual notice. Instead, she contends (in part) Walmart had constructive notice because Scranton created the dangerous condition. Even liberally construing this as an argument for actual knowledge, the assertion falls short.

"Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019). "When the negligence which produces the injury is that of an employee of the defendant, then . . . the employer's knowledge of the existence of the dangerous condition becomes inconsequential because the knowledge of the employee is chargeable against the employer." *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. Dist. Ct. App. 2001).

It's undisputed no Walmart employee saw the puddle before Borroto fell. But Borroto claims Scranton created the dangerous condition that led to her slip by leaving pizza boxes out to thaw for over an hour. Yet, like Walmart parries, no evidence supports an inference of condensation on the pizza boxes or water leaking out of them. Borroto simply guesses the pizza boxes dripped water on the floor. Nothing in the record—not even the testimony of Borroto
5

or her husband—supports that hunch. Scranton said the pizza boxes were not leaking that day. And according to him, those boxes never leaked from thawing in the six years he spent stocking pizzas. Nobody testified they were wet. What is more, the puddle was by itself with no trail leading to the pizzas or any other drips from where Scranton moved the rack.[4]

A recent case is instructive. *Toruno v. Sam's E., Inc.*, No. 17-21918-Civ-WILLIAMS/TORRES, 2018 WL 3934653 (S.D. Fla. July 25, 2018), *report & recommendation adopted*, 2018 WL 3882931 (Aug. 1, 2018). There, a court found defendant had actual notice of liquid leaking from boxes an employee was unloading. In doing so, the court relied on evidence (not speculation) to support an inference of actual notice. For instance, testimony revealed a trail of droplets from where plaintiff fell to the unloaded boxes. The employee pushed the boxes through the area just minutes before the fall. The box edges were wet and dripping a liquid like plaintiff slipped on. And plaintiff overheard a manager ask the employee if he noticed the boxes were leaking. So plaintiff in *Toruno* offered evidence for a reasonable inference the employee unloading boxes created the dangerous condition by allowing liquid to leak.

---

[4] Borroto's husband testified the water "seemed to be coming from the machine where they place the produce." (Doc. 57-2 at 8-9). No other witness testified to water coming from the produce area. Either way, for actual notice, the testimony is irrelevant. Borroto does not contend Walmart knew about water coming from the produce section (or any bunker islander). Nor does Borroto claim any employee created a mechanical problem with a cooler.

Unlike that case, Borroto offers no more than guesswork on the water coming from the pizza boxes. In other words, Borroto does not present evidence from which a reasonable jury could infer Walmart had actual notice.

## B. Constructive Knowledge

Borroto, however, need not prove Walmart knew about the water because notice may be inferred through constructive knowledge if the conditions are right. *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 930 (11th Cir. 2018). Plaintiffs make that showing in one of two ways:

> (a)  The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755(1)(a)-(b). The evidence offered in support may be direct or circumstantial. *Id.* Borroto does not argue Walmart regularly had water on the floor, so that theory is not addressed.

Importantly, "the mere presence of water on the floor is not enough to establish constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. Dist. Ct. App. 2011); *see also Pussinen v. Target Corp.*, 731 F. App'x 936, 937 (11th Cir. 2018). So "the record must contain additional facts to create a permissible inference regarding the amount of time the water had been on the floor." *Palavicini*, 787 F. App'x at 1013. Evidence for "signs of age" like

7

"dirt, scuffing, or tracks in a substance" can do the trick. *Berbridge*, 728 F. App'x at 930 (citations omitted).

It is undisputed that nobody knows how long the water was on the floor. Nor does any witness know where the liquid came from. Likewise, it's undisputed there were no markings or identifying characteristics from which a jury could infer the water was on the floor for enough time to charge Walmart with constructive knowledge. So this seems a straightforward case in which Borroto failed to show a genuine dispute on Walmart's notice of the condition. *E.g.*, *Palavicini*, 787 F. App'x at 1012-14. Still, Borroto contends Walmart had constructive knowledge because an employee was in the area, Scranton created the condition, and no inspection took place.

First, an employee's presence—on these facts—is not enough to establish constructive knowledge. The employee was stocking produce on a wet rack in the general area of Borroto's fall. The stocker did not see Borroto fall. And neither the video screenshots nor testimony offered establish the stocker could see the exact area where Borroto fell from where he stood. As the stocker explained, he was stocking produce, heard a "ruckus," and ran towards the deli to see Borroto on the ground. (Doc. 59-5 at 19-21, 28-31). This is important because if the stocker had to run along the wet rack, other shelves would have blocked his view of the floor where Borroto fell. Yet whether the stocker could see the ground from his vantage is unclear on this record. Even if the Court

8

assumed he could see the area, there is still no evidence that the stocker could or should have seen the spill.

While Borroto relies on two state court cases, neither applies. *See Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 261 (Fla. 2002); *Greenleaf v. Amerada Hess Corp.*, 626 So. 2d 263 (Fla. Dist. Ct. App. 1993). In those cases, employees were either in the "immediate vicinity" (i.e., inches from) a grape, *Markowitz,* 826 So. 2d at 258, 261, or could see an oily spill big enough to soak a plaintiff from their position, *Greenleaf,* 626 So. 2d at 263-64. Here, the water was described as a clear three- or four-inch puddle. And at best, the stocker was putting away produce several feet from the spill. In fact, the stocker never saw the water, even after walking over to inspect the area near Borroto. So this situation is analogous to two cases in the Southern District, which held employees in the general area of puddles did not have constructive knowledge absent facts suggesting they should have known about the conditions. *Ayers v. Wal-Mart Stores, E., L.P.*, No. 15-24663-CIV-GAYLES, 2017 WL 747541, at *2-3 (S.D. Fla. Feb. 27, 2017); *Garcia v. Target Corp.*, No. 12-20135-CIV-DIMITROULEAS/SNOW, 2013 WL 12101087, at *3 (S.D. Fla. Feb. 26, 2013). Because Borroto does not point to any evidence supporting an inference that the stocker could or should have seen the spill, this argument fails. *See Straube v. Moran Foods, LLC*, No. 8:16-cv-49-T-24 AEP, 2016 WL 6246539, at *3 (M.D. Fla. Oct. 25, 2016) ("Given this evidence, the mere

9

presence of these employees is not sufficient evidence to allow a reasonable jury to conclude that Defendant should have been on notice of the spill.").

What is more, even if the Court speculates the stocker should have seen the water, there is still no evidence it existed for enough time that he should have cleaned it up. Borroto simply points to a screenshot of the stocker taken thirty-seven seconds before the fall. But Borroto points to no precedent supporting a constructive notice finding based on an employee's presence several feet away from a small, clear puddle just seconds before a slip and fall.

Second, Borroto contends Walmart had constructive knowledge because Scranton created the condition. Again, this issue goes more to actual notice. All the same, the argument falls short for the same reasons described above. No evidence supports an inference the water came from the pizza boxes. Even if it did, Borroto offers no evidence on how long the condition existed. *See* Fla. Stat. § 768.0755(1)(a). While Borroto provides video screenshots showing the pizza boxes did not move for over an hour, those photos neither show water on the ground nor hint at when water might have leaked off the thawing pizzas. Mere evidence an employee was stocking products around a fall—without more—is not enough to show constructive notice. *Winn-Dixie Stores, Inc. v. Mazzie*, 707 So. 2d 927, 928-29 (Fla. Dist. Ct. App. 1998). So Scranton's knowledge of the pizza boxes does not show the water was on the ground for long enough to impute knowledge onto Walmart.

And finally, Borroto's theory that Scranton should have inspected the area is a nonstarter. To be sure, Scranton apparently did not inspect the area for over an hour while he was at the deli. But Borroto only contends Scranton should have inspected spills from the pizza boxes. Importantly, Scranton testified he looked around the pizza boxes before and after the fall—seeing no water or leaks. (Doc. 59-6 at 59-60, 67). So whether Scranton should have taken a break from the deli to inspect the pizza boxes falls flat because no evidence supports the notion of the pizza boxes contributing to the condition.

Even if Scranton should have inspected the area further, his failure to do so does not mean another employee didn't. Borroto does not contend no Walmart employees inspected the area during that time. Nor does Borroto offer the surveillance video for review. Yet it is undisputed Walmart trains all employees to look for spills while working on the floor. One of them (the bakery employee) was likely in the area at various times the day of the incident, although she could not give a specific time. What is more, Walmart specifically employs associates to sweep the entire store and check for hazards every hour. (Doc. 59-7 at 31-34). Mangers also patrol the store for spills. Borroto offers no indication those measures did not occur. At bottom, Borroto failed to show Walmart conducted no inspection of the area. *See Pussinen*, 731 F. App'x at 938-39.

11

All the same, if no inspection occurred for over an hour, that is not enough to show constructive notice on its own. *Espinoza v. Target Corp.*, No. 9:19-cv-81108-ROSENBERG/REINHART, 2020 WL 2813134, at *4 (S.D. Fla. May 29, 2020); *Wal-Mart Stores, Inc. v. King,* 592 So. 2d 705, 707 (Fla. Dist. Ct. App. 1991); *Smith v. Winn Dixie Stores, Inc.*, 528 So. 2d 987, 987 (Fla. Dist. Ct. App. 1988). Borroto cites several cases for the proposition that failure to inspect is evidence of constructive notice. Yet those cases presented additional evidence from which a jury could infer a substantial length of time existed between the last inspection and incident. In other words, the lack of inspection was "coupled with other circumstantial evidence." *Greenleaf,* 626 So. 2d at 264. Borroto, however, offers no evidence on how long the condition existed.

At bottom, Borroto must provide evidence supporting a reasonable inference that Walmart had constructive knowledge of the water. Such an inference cannot be "a degree of speculation and conjecture that renders its finding a guess or mere possibility." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982). Because that is all Borroto could ask a jury to do over notice, summary judgment is proper. *See Nieves v. Walmart Stores, E., LP*, No. 2:19-cv-00474-JLB-NPM, 2020 WL 6161474, at *7 (M.D. Fla. Oct. 21, 2020). Given this conclusion, it is unnecessary to address the argument on medical causation or Walmart's *Daubert* Motion on the issue. *Miller v. City of Fort Myers*, 424 F. Supp. 3d 1136, 1142-43 (M.D. Fla. 2020).

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. 57) is **GRANTED**.

(2) Defendant's Motion to Strike and/or *Daubert* Motion (Doc. 56) is **DENIED as moot**.

(3) The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on November 10, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record